# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CONCERNED FRIENDS OF FERRY COUNTY and FUTUREWISE, | No. 46305-9-II |
| Petitioners, | PUBLISHED OPINION |
| v. | |
| FERRY COUNTY and the GROWTH MANAGEMENT HEARINGS BOARD, | |
| Respondents. | |

BJORGEN, J. — Concerned Friends of Ferry County and Futurewise (collectively

Futurewise) challenge an order of the Growth Management Hearings Board finding Ferry

County in compliance with the requirements of the Growth Management Act (GMA), chapter

36.70A RCW, for the designation of Agricultural Lands of Long-Term Commercial Significance

(ARL or agricultural resource lands). Futurewise claims that the County violated the GMA by

adopting designation criteria inconsistent with its comprehensive plan and the minimum

guidelines promulgated pursuant to the GMA and by improperly applying those criteria,

resulting in the designation of too little land to comply with the goals and purposes of the

comprehensive plan and GMA. Futurewise further contends that the County's differing

treatment of federal, Indian reservation, and privately owned land is inconsistent with its comprehensive plan and violated the GMA. Finally, Futurewise challenges a number of factual statements in the Growth Management Hearings Board's compliance order on appeal.

We hold that the challenged county criteria for the designation of ARL are not clearly erroneous, but that the County's designation of ARL itself is contrary to the GMA, implementing Washington Administrative Code (WAC) rules, and the County's own comprehensive plan. Therefore, we reverse.

## FACTS

Ferry County lies in Eastern Washington, and largely consists of the Colville Indian Reservation and forest lands under the jurisdiction of the Washington State Department of Natural Resources or the United States Forest Service. According to the office of financial management, the County had an estimated population of 7,400 in 2005, projected to increase to 10,250 by 2030. Cattle ranching is Ferry County's major agricultural industry.

The County's designation of ARL under the GMA was challenged before the Growth Management Hearings Board (Board) in 2001. The Board issued a series of orders, culminating in 2013, finding the County's designation of ARL not in compliance with the GMA. Ninth Compliance Order, *Concerned Friends of Ferry County, et. al. v. Ferry County*, Nos. 01-1-0019, 97-1-0018c, 11-1-0003, 2013 WL 1179348, at *3 (W. Wash. Growth Mgmt. Hr'gs Bd. March 04, 2013). The County responded to the Board's 2013 order by adopting Ordinance No. 2013-03, which amended its comprehensive plan and designated ARL, as well as Ordinance No. 2013-05, which adopted criteria and standards for the designation of ARL.

As amended by Ordinance No. 2013-03, the comprehensive plan sets forth a "Natural Resource Goal" and 13 "Natural Resource Policies." Administrative Record at 6341-43. The Natural Resource Goal is to "[m]aintain and enhance natural resource-based industries in the county and provide for the stewardship and productive use of agricultural, forest and mineral resource lands of long-term commercial significance." AR at 6341. Of particular relevance, Natural Resource Policy 2 states that

> it is the Natural Resources Policy of Ferry County to . . . [d]esignate sufficient commercially significant agricultural . . . land to ensure the County maintains a critical mass of such lands for present and future use.

AR at 6341. As amended, the comprehensive plan generally describes the standards for designating ARL in the following terms:

> Designated agricultural lands are lands that include the growing capacity, productivity, and soil composition of the land for long-term commercial production, in consideration with the lands [sic] proximity to population areas, and the possibility of more intense uses of the land. To be included in this designation, lands also must not be already characterized by urban growth and must be primarily devoted to the commercial production of agricultural products enumerated in RCW 36.70A.030(2). Long-term commercial significance means the land is capable of producing the specified natural resources at commercially sustainable levels for at least the twenty year planning period, if adequately conserved.

AR at 6343.

Ordinance No. 2013-05, in turn, establishes the detailed process for the identification and designation of ARL. The process enumerates certain criteria that disqualify a parcel from consideration and others that earn or lose parcel points, ultimately designating qualifying parcels scoring five points or more as ARL. The point criteria at issue in this appeal concern soil classification, availability of public services, proximity to an urban growth area (UGA), predominant parcel/farm ownership size, proximity to markets and services, and history of nearby land uses. These criteria are described in more detail in the Analysis, below.

3

Once points are assigned, the process set forth in Ordinance No. 2013-05 removes from consideration parcels that are not part of "a contiguous block of 500 acres or more." AR at 6372. The contiguous blocks "may include multiple ownerships." AR at 6372.

Ordinance No. 2013-05 determined that parcels scoring five points or more qualified for designation as ARL, as long as the 500-acre block group minimum was met. The ordinance also provided that land subject to long-term grazing allotments or leases through the United States Forest Service or the Washington State Department of Natural Resources and land subject to long-term conservation easements were prescriptively subject to designation as ARL, apart from the point system.

After navigating the process set out in Ordinance No. 2013-05, the County designated 479,373 acres as ARL. Of this, 459,545 acres consisted of federal grazing allotments and 19,423 acres comprised state land similarly leased for grazing. The remaining 405 acres consisted of privately held land prescriptively designated as ARL because it was subject to long-term conservation easements.

After a hearing, the Board determined that these measures brought the County into compliance with the GMA. Futurewise then petitioned Thurston County Superior Court for review, and the parties sought a certificate of appealability allowing direct review by our court, which the Board granted. A commissioner of our court granted review. Ruling Granting Direct Review, *Concerned Friends of Ferry County, et al. v. Ferry County & State, Growth Mgmt. Hr'gs Bd.*, No. 46305-9-II (Aug. 15, 2014).

ANALYSIS

Futurewise contends that the County's criteria for designating ARL violate the GMA because the criteria (1) are inconsistent with and fail to implement the County's comprehensive

plan and (2) disregard or misapply the GMA's minimum guidelines for designating such lands. Futurewise also contends that the County violated the GMA by (3) improperly applying the designation criteria in an inconsistent manner and (4) weighting the criteria in a manner inconsistent with the GMA and the minimum guidelines. Futurewise claims that these errors resulted in the designation of insufficient land to meet the long-term requirements of the County's farmers and ranchers, contrary to the GMA and the comprehensive plan. Finally, Futurewise contends that the Board erroneously interpreted the GMA in finding the County in compliance by relying on "certain facts and opinions about [the] County's agriculture rather than the GMA criteria and minimum guidelines." Br. of Appellant at 47.

The County maintains that the Board did not err in ruling the ARL designation criteria consistent with the comprehensive plan and the GMA. The County further counters that its application of the criteria complies with the GMA and implementing regulations, that its weighting of the criteria is not clearly erroneous, and that it designated sufficient ARL to sustain agriculture in the County. Finally, it contends that the Board properly considered the unique characteristics of the County in reviewing the ordinances.

We conclude in sum that the County's criteria are consistent with its comprehensive plan, the GMA, and regulations implementing the GMA; but that its designation of ARL is not consistent with those criteria and does not designate adequate ARL to comply with the GMA.

## I. STANDARD OF REVIEW

We review the Board's decisions under the Administrative Procedure Act (APA), chapter 34.05 RCW, based on the record created before the Board. *Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 157 Wn.2d 488, 497, 139 P.3d 1096 (2006). We may grant relief from an

agency order in an adjudicative proceeding only if we determine that at least one of nine specified grounds is present. RCW 34.05.570(3)(a)-(i). The grounds relevant to this appeal are:

(d) The agency has erroneously interpreted or applied the law;
(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review;
. . .
(f) The agency has not decided all issues requiring resolution by the agency;
. . .
(i) The order is arbitrary or capricious.

RCW 34.05.570(3). Under the APA, the party challenging an agency's action bears the burden of demonstrating its invalidity. RCW 34.05.570(1)(a).

In appeals from a decision of the Board, this straightforward APA standard of review is compounded with standards governing the Board's review of local government actions. For example, RCW 36.70A.320(3) states that in reviewing challenges under the GMA, the Board "shall find compliance" with the GMA unless it finds the action "clearly erroneous in view of the entire record before the board and in light of the [GMA's] goals and requirements." That is, the Board may not invalidate a plan or regulation unless its review of the record leaves it with a "firm and definite conviction that a mistake has been committed." *See Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County*, 121 Wn.2d 179, 201, 849 P.2d 646 (1993). In addition, our Supreme Court has specified that

deference to county planning actions, that are consistent with the goals and requirements of the GMA, supersedes deference granted by the APA and courts to administrative bodies in general[, and] . . . a board's ruling that fails to apply this "more deferential standard of review" to a county's action is not entitled to deference from [the] court[s].

*Quadrant Corp. v. State, Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224, 238, 110 P.3d 1132 (2005).

The *Quadrant* court also specified that

> [w]hile we are mindful that this deference ends when it is shown that a county's actions are in fact a "clearly erroneous" application of the GMA, we should give effect to the legislature's explicitly stated intent to grant deference to county planning decisions.

*Quadrant Corp.*, 154 Wn.2d at 238. The court again touched on the "clearly erroneous" standard in *Kittitas County v. Eastern Washington Growth Management Hearings Board*, 172 Wn.2d 144, 156, 256 P.3d 1199 (2011), stating that

> [w]hile county actions are presumed compliant unless and until a petitioner brings forth evidence that persuades a board that the action is clearly erroneous, RCW 36.70A.320(3), deference to counties remains "bounded . . . by the goals and requirements of the GMA," *King County* [*v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*], 142 Wn.2d 543, 561, 14 P.3d 133 (2000).] The deference boards must give "is neither unlimited nor does it approximate a rubber stamp." *Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd.*, 161 Wash.2d 415, 435 n.8, 166 P.3d 1198 (2007).

(Alteration in original.)

Thus, we review the correctness of the Board's determination that the County's actions were not clearly erroneous, which requires our examination of the County's actions under that standard. We continue to review issues of law de novo, but give "[s]ubstantial weight" to the Board's interpretations of the GMA. *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008). We review disputed findings of fact by determining whether they are supported by substantial evidence in the record. *Brinnon Grp. v. Jefferson County*, 159 Wn. App. 446, 465, 245 P.30 789 (2011).

II. GOVERNING LAW

A.    The Growth Management Act (GMA), Chapter 36.70A RCW

The GMA requires that jurisdictions within its scope "designate where appropriate . . . [a]gricultural lands that are not already characterized by urban growth and that have long-term

7

significance for the commercial production of food or other agricultural products." RCW 36.70A.170(1). Ferry County brought itself within the scope of the GMA by opting into it. The GMA defines "[a]gricultural land" as "land primarily devoted to the commercial production of horticultural, viticultural, floricultural, dairy, apiary, vegetable, or animal products," including crops, hay, and livestock, "that has long-term commercial significance for agricultural production." RCW 36.70A.030(2). Land is "devoted to" agricultural use under RCW 36.70A.030 "if it is in an area where the land is actually used or capable of being used for agricultural production." *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 53, 959 P.2d 1091 (1998). Long-term commercial significance "includes the growing capacity, productivity, and soil composition of the land for long-term commercial production, in consideration with the land's proximity to population areas, and the possibility of more intense uses of the land." RCW 36.70A.030(10).

The GMA sets various goals to "guide the development . . . of comprehensive plans and development regulations." RCW 36.70A.020. The principal GMA goal served by designating and conserving ARL is that of RCW 36.70A.020(8), which states: "Maintain and enhance natural resource-based industries, including productive . . . agricultural . . . industries. Encourage the conservation of . . . productive agricultural lands, and discourage incompatible uses."

Jurisdictions subject to the GMA "shall adopt development regulations . . . to assure the conservation of" these ARL. RCW 36.70A.060(1). Our Supreme Court has held that "[w]hen read together, RCW 36.70A.020(8), .060(1), and .170 evidence a legislative mandate for the conservation of agricultural land." *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn. 2d 543, 562, 14 P.3d 133 (2000).

8

B.      Department of Commerce Regulations (Minimum Guidelines)

In designating ARL, the GMA requires counties to consider the guidelines promulgated by the Department of Commerce. RCW 36.70A.030(6), .050, .170(1). These guidelines "shall be minimum guidelines that apply to all jurisdictions, but also shall allow for regional differences that exist in Washington state." RCW 36.70A.050(3).

Of these, one of the principal guidelines covering ARL is that stated in WAC 365-190-050(3), which provides that "[l]ands should be considered for designation as agricultural resource lands based on three factors," namely land that (1) "is not already characterized by urban growth," (2) "is used or capable of being used for agricultural production," and (3) "has long-term commercial significance for agriculture."

The first factor is not at issue in this appeal. The second factor is illuminated by WAC 365-190-050(3)(b), which states:

> (i) Lands that are currently used for agricultural production and lands that are capable of such use must be evaluated for designation.
> . . .
> (ii) In determining whether lands are used or capable of being used for agricultural production, counties and cities shall use the land-capability classification system of the United States Department of Agriculture Natural Resources Conservation Service as defined in relevant Field Office Technical Guides.

Turning to the third factor, whether the land has long-term commercial significance, WAC 365-190-050(3)(c) sets forth 11 "nonexclusive criteria" that counties "should consider":

> (i)   The classification of prime and unique farmland soils as mapped by the Natural Resources Conservation Service;
> (ii) The availability of public facilities, including roads used in transporting agricultural products;
> (iii) Tax status;
> (iv) The availability of public services;
> (v) Relationship or proximity to urban growth areas;
> (vi)  Predominant parcel size;
> (vii) Land use settlement patterns and their compatibility with agricultural practices;

9

(viii) Intensity of nearby land uses;
(ix)  History of land development permits issued nearby;
(x)   Land values under alternative uses; and
(xi)  Proximity to markets.

The application of these criteria "should result in designating an amount of agricultural resource lands sufficient to maintain and enhance the economic viability of the agricultural industry in the county over the long term." WAC 365-190-050(5).

Finally, the minimum guidelines specify that "comprehensive plans must be internally consistent," meaning "differing parts of the comprehensive plan must fit together so that no one feature precludes the achievement of any other." WAC 365-196-500(1). Consistency, according to WAC 365-196-210(8), means that no feature of a plan or regulation is incompatible with any other feature of a plan or regulation.

### III. THE CHALLENGED FINDINGS OF FACT

Before turning to the validity of the County's designation criteria and its designation of ARL under those criteria, we address the findings of fact challenged by Futurewise.

A.    The Finding on the Commercial Significance of Hay Production

In assignment of error 5, Futurewise asserts that the finding of fact in the Board's compliance order that states "hay is not commercially significant but is accessory to the livestock industry" is not supported by substantial evidence. Br. of Futurewise at 5. This statement is not designated as a finding, but appears in a discussion of the County's agricultural limitations in the Board's compliance order. Clerk's Papers (CP) at 32. Treating it nevertheless as a finding, we agree with Futurewise that it is not supported by substantial evidence.

The comprehensive plan defines long-term commercial significance as meaning the land is capable of producing the resource at commercially sustainable levels for at

least the 20-year planning period, if adequately conserved. Cattle ranches are the

County's major agricultural industry. This industry

> is dependent upon federal and state grazing leases for summer grazing. The grazing leases allow grazing on Federal and State forest lands for only six months each year. During the six-month grazing season, hay is produced on private lands to sustain livestock through the balance of the year.

AR at 6343 (Comprehensive Plan § 7.4.31). Thus, whatever its significance considered in isolation, hay production is an essential element of the County's major agricultural industry. Unless the County's livestock industry itself is deemed not to be commercially significant, the production of hay needed to sustain it must also be deemed commercially significant.

The Board apparently based its opinion of lack of commercial significance on its assumption that $327,000 in annual sales was not significant. The County, however, points to no evidence in the record that this level of commercial hay production in the County is so small as not to contribute in any significant way to the needed winter supply of hay. Nor can we conclude that the possibility of providing this essential feed from outside the County somehow makes it commercially insignificant under the GMA. Such a reading would enervate the GMA's goal of maintaining and enhancing productive agricultural industries and conserving productive agricultural lands in the jurisdiction. The Board's statement that "hay is not commercially significant," treated as a finding of fact, is not supported by substantial evidence in the record.

B.     The Remaining Challenged Findings

Futurewise also assigns error to statements in the Board's compliance order that the federal grazing allotments are included in the total figure of 749,452 acres in farms, that there are an estimated 25,215 acres of privately owned farm land in the County, and that the County is ranked last in market value of crop and livestock products.

Assuming that these propositions serve as findings of fact, they do not play a role in our analysis. Therefore, we do not address them further.

#### IV. CONSISTENCY OF THE ARL DESIGNATION CRITERIA WITH THE GMA AND THE COUNTY'S COMPREHENSIVE PLAN

Futurewise contends that certain of the County's ARL designation criteria adopted in Ordinance 2013-05 are inconsistent with the GMA and fail to implement the comprehensive plan, contrary to RCW 36.70A.130(1)(d). We disagree and hold that the ARL designation criteria are not clearly erroneous.

A.     The County's Use of a Point System

Futurewise first takes issue with the County's use of a point system, pointing out that nothing in the plan calls for such a system. Futurewise argues that the point system is thus inconsistent with and fails to implement the plan, contrary to RCW 36.70A.130(1)(d).

Through Ordinance No. 2013-05, the County adopted criteria to assess whether land has long-term commercial significance for agricultural uses. These criteria closely track the criteria of WAC 365-190-050(3)(c) for the same purpose. As part of that assessment, Ordinance No. 2013-05 assigned or subtracted points to measure how well individual parcels complied with certain criteria.

RCW 36.70A.130(1)(d) states:

Any amendment of or revision to a comprehensive land use plan shall conform to this chapter. Any amendment of or revision to development regulations shall be consistent with and implement the comprehensive plan.

Nothing in this sort of point system violates or is inconsistent with these requirements, as Futurewise urges. To the contrary, a principled and consistent point system can give needed rigor to the determination of compliance with more generally phrased criteria. This, if anything,

nourishes compliance with RCW 36.70A.130(1)(d).  Futurewise's contention that a point system is inconsistent with the GMA borders on the frivolous.

B.      Consistency of Individual Designation Criteria[1] With the GMA and the Comprehensive Plan

    1. Criterion One:  Soil Classification

This criterion assigns points to parcels based on the particular classes of soils they contain under the United States Department of Agriculture's soil classification system.  Parcels consisting entirely of "Class II" soils receive six points, and those consisting of "Class III" soils receive four points.  Parcels consisting of "Class IV" soils, including soils that qualify as Class III only if irrigated, qualify for two points if the parcels have irrigation.  Parcels consisting of different classes of soils receive points in proportion to the relative area of each class.

Futurewise contends that this criterion misinterprets and misapplies WAC 365-190-050(3)(c)(i), which specifies that counties should consider "[t]he classification of prime and unique farmland soils as mapped by the Natural Resources Conservation Service."  Br. of Futurewise at 19-21.  First, Futurewise takes issue with the County's failure to assign points for "Class I" soils, those with the fewest limitations for agriculture.  Futurewise points to nothing in the record, however, casting doubt on the County's assertion that Ferry County contains no Class I soils.  The Board's approval of a point system that declines to assign points to soils not present in the county is not clearly erroneous.

Futurewise also takes issue with the County's failure to assign points to Class III and IV soils unless they are irrigated.  Futurewise points out that the County contains 1,293 acres of "Ret silt loam, heavy variant," a "[p]oorly drained" Class IV soil, which the United States

---

[1] The designation criteria are found in Ordinance No. 2013-05, at 20.

Department of Agriculture considers "[p]rime farmland" as long as it is "drained and either protected from flooding or not frequently flooded." AR at 6505-06, 6510, 6709. Futurewise argues that it makes no sense to deny points to nonirrigated parcels with this soil because irrigation does not address the soil's limitations and may even make it less suitable to agriculture. The County responds by pointing out that Class IV soils "have severe limitations on their use as agricultural land," but does not explain how irrigation would address these limitations or point to evidence in the record supporting its decision to award points for irrigating a soil type that is already poorly drained and possibly in need of protection from flooding. Br. of Resp't at 17.

Futurewise is correct that awarding points for irrigating Class III and IV soils that are overly wet contradicts the purposes of the GMA in designating ARL. However, the only example it gives of any land improperly excluded is the Ret Silt Loam, which would qualify as prime farm land only if drained and not frequently flooded. Futurewise does not point to any evidence that any parcels containing this soil have been drained and are protected from flooding or are not frequently flooded. With that, it has not shown that this criterion, although flawed in general, has had any effect on the designation at issue.

Finally, Futurewise takes issue with the County's assignment of particular point values to parcels with particular soil classifications on the ground that the County does not explain its basis. Ordinance No. 2013-05, however, states that "soil types are assigned a numeric score from 2 (least suitable) to 6 (suitable), depending on their relative suitability as productive agricultural soil." AR at 6364. Thus, the assignment of points depends on soil productivity, which is one of the key constituents of long-term commercial significance under RCW 36.70A.030, noted above. Criterion One is not clearly erroneous.

2. Criterion Three: Availability of Public Services

In this criterion, the County "determined that potential agricultural land within close proximity to LAMIRDs [limited areas of more intense rural development] should be protected." AR at 6369. The ordinance deems "close proximity" to be one-quarter mile or less, but assigns no points for this feature.

Futurewise argues that awarding zero points to parcels one quarter mile or less from a LAMIRD,[2] is inconsistent with and fails to implement the plan. Futurewise further argues that this criterion amounts to a misinterpretation and misapplication of WAC 365-190-050(3)(c)(iv), which specifies that counties should consider the availability of public services in designating ARL.

The first argument appears to follow from the mistaken premise that, under the designation process, parcels within a quarter mile of a LAMIRD cannot qualify as ARL. This criterion, however, awards no points to any parcel, whether or not within a quarter mile of a LAMIRD. Thus, it does not increase or decrease the likelihood that any parcel will be designated. Futurewise fails to show that the Board erred in ruling this criterion to be consistent with the plan.

Futurewise's argument based on WAC 365-190-050(3)(c)(iv) also fails to persuade. Ordinance No. 2013-05, at 23, noted that Ferry County only has one UGA and focused its discussion of public services on land near LAMIRDs. The discussion concluded that potential agricultural land near LAMIRDs should be protected, but assigned no points to do so. Even if

---

[2] LAMIRDs are areas outside of UGAs in which development more intensive than that otherwise allowed in rural areas may be permitted subject to the restrictions of RCW 36.70A.070(5)(d).

some may disagree with this, the Ordinance makes clear that the County reasonably considered the availability of public services in designating ARL. Criterion Three is not clearly erroneous.

3. Criterion Four: Proximity to the Republic Urban Growth Area

This criterion assigns one point to parcels more than five miles from the city of Republic UGA and zero points to parcels within five miles of that UGA to minimize the potential adverse impacts of agricultural and nonagricultural uses on each other. Ordinance No. 2013-05 gives two reasons why this is a significant factor in designating ARL:

> [F]irst[,] land in close proximity to an urban growth area is subject to population expansion and is influenced by the spatial advances of that growth of an urban nature, including more intense uses and higher urban densities.
> . . . .
> The second reason . . . relates to the suitability of lands for agricultural use and the recognition that there are potential adverse [e]ffects caused by the spraying of insecticides and herbicides in current farming practices and the odorous effects in fertilizing planted crops and raising of animals.

AR at 6370.

Futurewise contends this criterion is not supported by substantial evidence. It points out that, assuming a density of four housing units per acre and 1.72 persons per unit, a single square mile would more than suffice to accommodate the County's entire projected population growth until the year 2030. Thus, Futurewise argues, "Land three and four miles from the [UGA] does not have a relationship with the [UGA] that would in any way impact the lands [sic] ability to be used for agriculture long-term." Br. of Futurewise at 24.

Ordinance No. 2013-05 acknowledges that the city of Republic is not expected to fill this entire five-mile radius, but recognizes that harmful effects from spraying of pesticides and odors from fertilizing and cattle raising reach much further than immediately adjacent lands. Also important is the fact that cities and UGAs do not expand evenly at all points. For these reasons, the awarding of one point under this criterion to parcels more than five miles from the Republic

UGA, but none to parcels within five miles of the UGA, is not clearly erroneous and is supported by substantial evidence.

4. Criterion Five: Predominant Farm Size

This criterion assigns points to farms of different sizes based on contiguous land in the same ownership, ranging from negative three points for farms less than 10 acres to positive three points for farms of 1,000 acres or more. Only farms of 180 acres or more score points. This point assignment is proper, according to Ordinance No. 2013-05, because "larger farms are more suitable to the typical agricultural activities historically represented in Ferry County, such as grazing and hay production." AR at 6370.

Futurewise argues that this criterion is inconsistent with and fails to implement the comprehensive plan and amounts to an erroneous interpretation of WAC 365-190-050(3)(c)(vi), which specifies that counties should consider "[p]redominant parcel size" in designating ARL.[3] Br. of Futurewise at 25-30. Futurewise also argues that substantial evidence does not support the Board's ruling that the criterion complies with the GMA.

Futurewise points out that, although the County used the farm size categories from the United States Department of Agriculture's Census of Agriculture to assign point values, it apparently considered only land owned by the farm operator, not land which the operator leases or rents, while the census counted such lands in its farm size calculations. Similarly, the County considered only contiguous parcels in calculating farm size, while the census apparently did not impose such a limitation.

---

[3] Futurewise also appears to take issue with the criterion's exclusion of platted parcels smaller than 20 acres. The parties apparently have different understandings of what this provision means: the County's brief asserts that it only excludes lots already platted for development. Regardless, Futurewise presents no argument in its brief why this exclusion violates the GMA. Thus, we need not address the issue. RAP 10.3(a)(6).

Depending on the terms of the lease, an operator's right to farm leased land is typically less secure than the ability to farm land owned in fee. Similarly, a farm consisting of scattered, discontinuous segments, although in the same ownership, may face challenges to long-term viability not faced by contiguous farms of the same size. Ordinance No. 2013-05, at 24, states that it considered economies of scale, among other matters, in devising the allocation of points to implement this criterion. Given this, we cannot say that the County's method of calculating farm size in its determination of long-term commercial significance was clearly erroneous or that it was not supported by substantial evidence. Under the applicable standards, it is consistent with both WAC 365-190-050(3)(c)(vi) and the comprehensive plan.

5  Criterion Six: Proximity to Markets/Services

This criterion assigns one point to parcels within 50 road miles of "Market/Services," apparently referring to a cattle market in Davenport. This criterion recognizes, according to Ordinance No. 2013-05, the geographical isolation of the county's population centers and the difficulties farmers and ranchers face in getting agricultural products to market and obtaining support services.

According to maps subject to judicial notice under ER 201, the only land in the county within 50 road miles of Davenport lies in the Colville Indian Reservation. Although the County asserts jurisdiction over reservation fee lands within its borders, it declined to designate any reservation lands as ARL, because it "cannot . . . set policy in any way that would interfere with the sovereignty of the Tribe." AR at 6374. Whether Ferry County in fact has authority to designate reservation land as ARL under *Brendale v. Confederated Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408, 432, 109 S. Ct. 2994, 106 L. Ed. 2d 343 (1989), need not detain this analysis. Because the County designated no reservation land, this criterion assigned no

points to any parcel in the County. Thus, this criterion has no apparent effect on the designation of ARL challenged in this appeal.

Futurewise argues, though, that livestock is typically transported to feedlots from points more than 50 miles distant and that the County is linked to several livestock markets in the city of Spokane. Futurewise also points out that this criterion does not account for the transportation of hay. The fact, however, that most cattle in the region may be shipped more than 50 miles to market does not necessarily make the County's criterion clearly erroneous. Cattle ranching is the County's main agricultural industry, and parcels within 50 miles of the nearest livestock market could logically have a higher probability of being commercially significant in the long term. Further, the significance of hay production to Ferry County, as discussed in this opinion, lies in its support of the local livestock industry. Thus, proximity to ports or markets serving the sale of hay to more distant locales would have little to do with the commercial significance of hay grown in Ferry County. Futurewise has not shown that the adopted 50-mile criterion is clearly erroneous.

6  Criterion Seven: History of Nearby Land Uses

Under this criterion one point is subtracted from parcels adjacent to residential uses. This criterion is justified, according to Ordinance No. 2013-05, because "[t]he most common nearby land use which has an effect on lands' long-term commercial significance is adjacent residential use." AR at 6371.

Futurewise contends that subtracting one point for parcels adjacent to residential uses is inconsistent with the comprehensive plan and GMA and amounts to an erroneous interpretation of WAC 365-190-050(3)(c)(ix), which specifies that counties should consider the "[h]istory of land development permits issued nearby" in designating ARL. Br. of Futurewise at 33-34.

19

Futurewise points to an aerial photograph of a farm, taxed as "Resource – Agriculture Current Use" but not designated ARL, that shows some residential buildings adjacent to the fields. From this, Futurewise argues that the criterion "does not distinguish between farm houses and other houses," but instead subtracts one point "regardless of whether the [adjacent] residence is a farm or ranch house." Br. of Futurewise at 33-34.

Futurewise, however, points to no evidence that the County applied this criterion to agricultural land with adjacent farm or ranch residences. Futurewise thus failed to bring forth evidence to show that the action is clearly erroneous, as its burden required. *Kittitas County*, 172 Wn.2d at 156. Accordingly, Futurewise's challenge to this criterion fails.

7. The 500-Acre Block Group Minimum

After setting out the criteria implemented by allocating points, Ordinance No. 2013-05 turns to a discussion of "Other Factors Considered." AR at 6372. Among these is one entitled "Block Group," which states, "To be considered long-term commercially significant, agricultural lands should be in a contiguous block of 500 acres or more. This may include multiple ownerships." AR at 6372. Although phrased in terms of "should," the County applies this as a required minimum.

Futurewise argues that the Board erred in finding this 500-acre minimum to be consistent with the plan.[4] While acknowledging that Natural Resource Policy 9 states that "whenever possible" the County should avoid "designating very small areas," Futurewise maintains that an area just under 500 acres is not very small and points out that this criterion *always* excludes such

---

[4] Futurewise initially points out that nothing in the plan expressly calls for limiting designation of ARL to blocks of at least 500 acres, arguing that this makes the criterion inconsistent with the plan. This argument fails for the same reasons discussed in subpart A, above.

parcels, not just whenever it is possible to do so consistently with the plan. Br. of Futurewise at 14.

In upholding the ordinances here at issue, the Board relied in part on the County's unique features as an agricultural area of Washington State. The Board noted the substantial evidence in the record indicating that the County's viable crop land is quite limited due to poor soils, severe winters, short growing season, and sparse rainfall.

The Board's decision on appeal also noted that in adopting the 500-acre minimum block size, the Board of County Commissioners made the following findings of fact:

> *Block Size*: This criterion is reduced from 1000 acres to 500 acres as a result of continued consultation with Department of Commerce, at whose recommendation the County engaged in a scatter analysis. For purpose of scatter analysis, leaving all other factors unchanged, the block size is reduced and the effect on contiguous lands subject to potential designation is reconsidered. This is repeated until the lands begin to appear in a scattered fashion across the map. The block size is then increased until the scatter is gone. Department of Commerce has previously indicated in writing that scatter was to be avoided, and meetings after the Ninth Compliance Order was issued confirm that Department of Commerce would support a block size sufficient to eliminate scatter. The particular block size of 500 acres is recommended because calculations below that level result in scatter.

CP at 31 (footnote omitted).

The Department of Commerce is the principal state agency implementing the GMA. As the record shows, the Department informed the County that it would support a block size sufficient to eliminate scatter and recommended a scatter analysis to find the smallest block size that would do so. The County carried out the analysis and found that block sizes less than 500 acres would result in scatter. The County then halved its prior 1,000-acre block size to conform to the Department's recommendation. Futurewise does not argue that the scatter analysis was flawed or insufficient.

The 500-acre minimum block size, therefore, is a reasonable attempt to find the smallest minimum size that would prevent scatter, while taking into consideration the straitened circumstances of agriculture in the County. As such, Futurewise has not shown that the Board's upholding of this standard was clearly erroneous or that it was inconsistent with the comprehensive plan or the GMA.

## V. CONSISTENCY OF THE ARL DESIGNATION WITH THE COUNTY'S CRITERIA AND THE GMA

Apart from its challenge to certain individual designation criteria, Futurewise contends that the County designated too little land as ARL to comply with the goals and purposes of the comprehensive plan and GMA.[5] We agree that the County's designation does not comply with applicable law.

A.     The County Designated None of the Over 2,816 Acres Which its Designation Criteria and Point System Indicated Should be Designated as ARL

The best evidence in the record as to how the County applied its criteria and point system to reach its ARL designation is Table B of Ordinance No. 2013-05. AR at 6374-76. As explained by the County's supplemental brief, the columns of that table show the County's application of new criteria as a result of a series of rulings by the Board finding it out of compliance. This is consistent with the introductory statement to Table B specifying that it "shows the total acreage of land designated . . . under several alternative weighting criteria." AR at 6374.

---

[5] Futurewise points out that the County asserts regulatory authority over fee lands on the Colville Indian Reservation, but "has failed to designate any of these lands through the application of criteria that violate the GMA." Br. of Futurewise at 47. To the extent this challenges the County's action not to designate any ARL on the reservation, it is not adequately briefed for our consideration. *See Habitat Watch v. Skagit County*, 155 Wn.2d 397, 416, 120 P.3d 56 (2005); *Pub. Util. Dist. No. 1 of Pend Orielle County v. State, Dep't of Ecology*, 146 Wn.2d 778, 821 n.13, 51 P.3d 744 (2002).

Each column in Table B shows changes to ARL designations in specified years. The entries in each column show the number and acreage of parcels removed from consideration as ARL because they do "not meet threshold." AR at 6374-76 (Ordinance No. 2013-05, Table B). The County's supplemental brief at page 2 states that the phrase "[d]oes not meet threshold" refers to whether the land under consideration "meets all the criteria for designation." (Emphasis omitted.) Thus, the parcels noted as not meeting the threshold were removed because they did not meet at least one of the County's criteria, including those point criteria discussed above and the 500-acre block minimum.

The "Total Acreage" bottom line of Table B begins with the figure of 3,719 acres designated in the 2009 iteration and then shows in each column the number of acres added or subtracted in each subsequent iteration. The last two columns are for the 2013 designation here at issue and, according to the County's supplemental brief at pages 3-4, show the results of different variations in criteria and points. The final calculation at the bottom of the last column shows "-2657.06 = 2816.85." CP at 6374.

As noted, Ordinance No. 2013-05 itself states that Table B "shows the total acreage of land designated" under different alternatives. CP at 6374. Thus, the 2,816-acre figure is what the process in Table B indicates should be designated under the criteria by the most recent alternative given. The County states, though, that the 2,816.00-acre figure represents the acreage eliminated because it does not meet the block group minimum. This, however, contradicts the actual figures in Table B. Adding up all the acreage in the last column noted as removed because it did not "meet [the] threshold" gives the sum of 2,656.96 acres, almost identical to the 2,657.06 shown as removed at the bottom of the last column. CP at 6374. As noted, the phrase "[d]oes not meet threshold" includes all the criteria for designation. The 500-acre minimum

block size is one of these criteria. Thus, the 2,816.00-acre figure does not represent acreage eliminated in the last iteration, but the remaining qualifying acreage under the County's criteria after the removal of 2,657.06 acres in the final iteration.

In addition, the County acknowledges that the final two columns in Table B use the prior 1,000-acre minimum block size. The larger the minimum, the more land will be excluded. Therefore, the 500-acre minimum, which was ultimately adopted, will result in more than 2,816 acres qualifying for designation as ARL under the County's own criteria. How much more cannot be divined from this record.

As noted, the County designated a total of 479,373 acres of ARL. Ordinance No. 2013-05 prescriptively designated as ARL 459,545 acres of federal grazing allotments and 19,423 acres of state land also leased for grazing for a total of 478,968 acres. The remaining 405 acres consisted of privately held land prescriptively designated as ARL because it was subject to long-term conservation easements. These 405 acres, even if contiguous, could not meet the 500-acre block size minimum in the County's designation criteria discussed above. Therefore, the County designated zero acres as ARL as the result of its designation criteria and point system.

B.     The County's Designation of ARL Failed to Comply with Governing Law

The County offers no justification for failing to designate any of the over 2,816 acres that its own criteria showed qualified as ARL. More to the point, this failure contradicted the policies of the GMA and the County's comprehensive plan. As set out in the facts, the County's major agricultural industry is cattle ranching, which depends on federal and state grazing leases for the six-month summer grazing season and the production of hay on private lands to sustain livestock through the rest of the year. According to maps and other evidence in the record, the federal land designated has little prime agricultural soil and includes mountainous areas with soils unsuited to

cultivation. AR 1712-15, 6505-11, 6549-746; *compare also* AR 1712-15, 6356 (the County's ARL designation maps) *with* UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE TOPOGRAPHICAL MAPS, Nos. 482211807-482211845, 483011807-483011845, 484511807-484511845, 485211807-485211845, *available at* http://data.fs.usda.gov/geodata/rastergateway/states-regions/grid_zoom.php?regionID=r6&gridSrc=48118.

In addition, the record shows that the United States Forest Service permits only seasonal grazing on federal forest lands, not hay cultivation. The County does not argue or point to evidence that hay may be grown on the state grazing lands. Thus, we must conclude from this record that the 478,968 acres of state and federal grazing leases designated as ARL play little, if any, role in the production of hay. At most, only the remaining 405 acres prescriptively designated as ARL may help provide the hay critical to Ferry County's main agricultural industry.

The principal GMA goal served by designating and conserving ARL is that of RCW 36.70A.020(8): to "[m]aintain and enhance natural resource-based industries, including productive . . . agricultural . . . industries." This and related provisions evidence "a legislative mandate for the conservation of agricultural land." *King County*, 142 Wn. 2d at 562. The purpose of ARL designation is further focused by WAC 365-190-050(5), which states that in the application of ARL designation criteria, "the process should result in designating an amount of [ARL] sufficient to maintain and enhance the economic viability of the agricultural industry in the county over the long term."

The County's comprehensive plan goals and policies are consistent with these state goals. One of the plan's two goals specifically relating to agricultural lands is to "[m]aintain and enhance

25

natural resource-based industries in the county and provide for the stewardship and productive use of [ARL]." AR at 6341. Even more to the point, the plan's Natural Resource Policy 2 states:

> [i]n furtherance of the Natural Resources Goal and the overall goals of the GMA, it is the Natural Resources Policy of Ferry County to . . . [d]esignate sufficient commercially significant agricultural . . . land to ensure the County maintains a critical mass of such lands for present and future use.

AR at 6341.

The County attempted to comply with these goals and policies by designating a large amount of land, 479,373 acres, as ARL. Ninety six percent of this total, however, consists of federal grazing lands, which the record shows are not suitable to hay production. In addition, Ordinance No. 2013-05 states that the County does not have regulatory jurisdiction on federal lands. AR at 6372. The ultimate purpose of designating ARL under the GMA is to conserve these lands. RCW 36.70A.020, .060(1). Thus, although not itself in violation of the GMA, the designation of federal grazing lands is of no effect in determining whether the County's designation of ARL complied with the GMA.

The County also designated 19,423 acres of state grazing land as ARL. Assuming the County does have regulatory authority over these grazing lands, it does not argue or point to evidence that hay may be grown on them. Thus, we conclude on this record that 478,968 of the total 479,373 acres designated, over 99 percent, are not suitable for hay production, a critical component of sustaining the County's livestock industry.

The County's designation criteria examined long-term commercial significance for agriculture, which according to RCW 36.70A.030(10), depends on growing capacity, productivity, soil composition, proximity to population areas, and the possibility of more intense uses of the land. The criteria themselves covered soil type, tax status, availability of public

services, proximity to a UGA, parcel size and other matters, all going to the likelihood of sustained agricultural production.

The criteria, in other words, were the tool most suited to identifying lands suitable for hay production. For unknown reasons, the County designated none of the over 2,816 acres qualifying under its criteria and instead designated land more than 99 percent of which is not suitable for hay production, as far as the record shows. The 405 acres prescriptively designated as containing conservation easements may or may not be suitable for hay production, but those lands did not qualify under the measure most suited to determine long-term productivity, the County's own criteria.

Declining to designate any of the land that qualifies under the criteria, especially when that overlooks a critical component of the County's principal agricultural industry, does not meet the GMA's goal of maintaining and enhancing productive agricultural industries or the minimum guideline of maintaining and enhancing the economic viability of the agricultural industry, set out in WAC 365-190-050(5). These actions are also contrary to the comprehensive plan's goal of maintaining and enhancing the agricultural resource-based industries in the County and the plan's policy of designating sufficient commercially significant agricultural land to ensure the County maintains a critical mass of such lands for present and future use. In fact, the text immediately before Table B in Ordinance No. 2013-05 states that "[a] weighting of criteria that is calculated to assure that no lands are designated does not provide sufficient 'critical mass' to assure the viability of the agricultural industry over the long term." AR at 6374. That, however, is precisely what the County did in not designating any of the land qualifying under its criteria.

RCW 36.70A.020 states that the goals it lists "shall be used exclusively for the purpose of guiding the development of comprehensive plans and development regulations." The

comprehensive plan's goal of maintaining and enhancing agricultural industries in the County and its policy of maintaining a critical mass of commercially significant agricultural land are consistent with and implement the GMA goal. Thus, they supply the frame for judging whether a designation of ARL is consistent with the GMA, as well as with the comprehensive plan. The minimum guideline of WAC 365-190-050(5) also supplies guidance for determining GMA compliance. At the least, those goals, guidelines, and policies mean that a local government cannot decline to designate the land which its criteria show should be designated, when that potentially jeopardizes a critical component of the jurisdiction's principal agricultural industry. For that reason, the County's designation of ARL conflicted with the GMA, implementing WAC rules, and the comprehensive plan and was clearly erroneous. The Board erred in upholding it.[6]

We add as guidance to the County that simply designating the 2,816 or more acres indicated by its criteria does not necessarily assure compliance with the GMA. Even though we have concluded that the individual challenged criteria are not clearly erroneous, a designation of ARL under them would still violate the GMA if it failed to meet the minimum guideline of WAC 365-190-050(5), the comprehensive plan goals of maintaining and enhancing productive agricultural industries, or the "critical mass" Natural Resource Policy of the comprehensive plan, each discussed above. We recognize the necessary imprecision in those goals and policies and the deference due local decisions in how to meet them. Nonetheless, these goals and policies must be honored in the designation of ARL.

---

[6] With this conclusion, it is unnecessary to address Futurewise's contention that the County's differing treatment of federal, Indian reservation, and privately owned land is inconsistent with its comprehensive plan and the GMA.

## CONCLUSION

The County's designation of ARL was clearly erroneous, because it conflicted with the GMA, implementing WAC rules, and the Ferry County comprehensive plan. The Board, therefore, erred in upholding it. For these reasons, we reverse the Board's decision.

BJORGEN

We concur:

JOHANSON, C.J.

MELNICK, J.